23-465-cv
*Witcher v. New York City Department of Education*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of June, two thousand twenty-four.

PRESENT:
> GERARD E. LYNCH,
> MYRNA PÉREZ,
> MARIA ARAÚJO KAHN,
> > *Circuit Judges.*

---

SELENA C. WITCHER,

> *Plaintiff-Appellant*,

v.                                                                              No. 23-465

NEW YORK CITY DEPARTMENT OF EDUCATION, DR. COLLIN WOLFE, DR. LORENA MORENO, VICTORIA WALTERS,

> *Defendants-Appellees*.[*]

---

[*] The Clerk of Court is respectfully directed to amend the caption as displayed above.

FOR PLAINTIFF-APPELLANT:                    SELENA C. WITCHER, pro se, Jamaica, NY.

FOR DEFENDANTS-APPELLEES:                 CHASE H. MECHANICK (MacKenzie Fillow, *on the brief*), *for* Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Gardephe, *Judge*; Netburn, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** in part, and the action is **REMANDED** for further proceedings consistent with this order.

Plaintiff-Appellant Selena Witcher worked as a special education teacher for the New York City Department of Education.   She alleged in a pro se complaint that she was subjected to discrimination and retaliation after she obtained a remote-work accommodation in September 2020 for her obesity, which elevated her risk of developing severe illness from COVID-19.   Among the defendants named in the operative complaint were the principal and assistant principal at her school, who allegedly made false accusations about her performance, issued disciplinary write-ups, demoted her to a more demanding position, discontinued her probation, and denied her tenure.

The defendants moved to dismiss the operative amended complaint under Federal Rule of Civil Procedure 12(b)(6), contending that Witcher failed to allege plausible claims under the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law

2

("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").[1]  Adopting the magistrate judge's report and recommendation, Judge Gardephe dismissed Witcher's ADA claims, declined to exercise supplemental jurisdiction over the NYSHRL and NYCHRL claims, and declined to permit further leave to amend.  *See generally Witcher v. N.Y.C. Dep't of Educ.*, No. 21-CV-07750 (PGG) (SN), 2023 WL 2609342 (S.D.N.Y. Mar. 23, 2023).  Witcher timely appealed.  As we write primarily for the parties, we assume familiarity with the facts and procedural history of this case and set forth only what is necessary to explain our disposition.

## STANDARD OF REVIEW

We review de novo the district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in Witcher's favor.  *See Collins v. Putt*, 979 F.3d 128, 132 (2d Cir. 2020).  To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The submissions of pro se litigants are construed to raise the strongest claims and arguments they suggest.  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam).

## DISCUSSION

Upon careful review, we agree that Witcher failed to plead ADA discrimination and failure

---

[1] Witcher brought other claims below that she has now either expressly or implicitly abandoned.  *See LoSacco v. City of Middletown*¸ 71 F. 3d 88, 92–93 (2d Cir. 1995).  She also withdrew certain claims below that she attempts to resurrect on appeal, which we decline to permit.  *Cf. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, waiver will bar raising the issue on appeal." (alteration and internal quotation marks omitted)).

to accommodate claims for substantially the same reasons articulated in the decisions below. As for her ADA discrimination claim, Witcher has not demonstrated that any of the defendants' alleged adverse actions were *because of* Witcher's disability. *Natofsky v. City of New York*, 921 F.3d 337, 348–50 (2d Cir. 2019) ("[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."). As for her ADA failure to accommodate claim, Witcher received an accommodation for her obesity, and the operative amended complaint does not adequately allege that any mental health conditions were sufficiently disabling or that any of the defendants *knew* of these conditions. We therefore affirm the judgment in part.

We conclude, however, that: (1) Witcher plausibly alleged an ADA retaliation claim; and (2) under a proper liberal construction, Witcher's complaint raised an ADA interference claim that the district court should have assessed.

## I. Witcher Plausibly Alleged an ADA Retaliation Claim

We conclude that Witcher stated a plausible claim of retaliation under the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a). Section 12203(a) prohibits retaliation against a person who has "made a charge, testified, assisted, or participated in any manner" in an ADA "investigation, proceeding, or hearing." 42 U.S.C. § 12203(a). A plaintiff raising a retaliation claim under the ADA must plausibly allege that she (1) "was engaged in protected activity," (2) "the alleged retaliator knew that plaintiff was involved in protected activity," (3) "an adverse decision or course of action was taken against plaintiff," and (4) "a causal connection exists between the protected activity and the adverse action." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky*, 921 F.3d at 353). The focus of the district court in granting the

4

defendants' motion to dismiss centered on whether Witcher's *receipt* of a reasonable accommodation constitutes protected activity under the ADA's anti-retaliation provision. *See Witcher*, 2023 WL 2609342, at *14. That question need not be answered in this case, however, because the accommodation request and the accommodation approval merged for these particular defendants. According to the operative complaint and drawing all reasonable inferences in Witcher's favor, the defendants became aware of the request when they were notified that the request was granted. Thus, the relevant starting point for the analysis of this ADA retaliation claim is September 2020, when the defendants allegedly learned of Witcher's accommodation. *See Tafolla*, 80 F.4th at 125 (requiring that "the alleged retaliator kn[o]w that plaintiff was involved in protected activity").

This case differs from *Clark County School District v. Breeden*, 532 U.S. 268 (2001) (per curiam), in which the Supreme Court described as "utterly implausible" that the Equal Employment Opportunity Commission's ("EEOC") "issuance of a right-to-sue letter—an action in which the employee takes no part—is a protected activity of the employee" for the purposes of the Title VII antiretaliation provision, 42 U.S.C. § 2000e-3(a). *Id.* at 273. There, the Supreme Court further stated that "there [wa]s no indication that [the assistant superintendent] even knew about the right-to-sue letter when she proposed transferring" the plaintiff. *Id.* And even if the assistant superintendent there was aware of the letter, her predecessor presumptively "knew *almost two years earlier* about the protected action (filing of the EEOC complaint) that the letter supposedly disclosed" because "both Title VII and its implementing regulations require that an employer be given notice within 10 days of filing." *Id.* In that case, the plaintiff failed to establish the requisite causation between the purported protected activity and the adverse action

5

because the school district knew about the filing of the complaint twenty months before a transfer was ever proposed. *See id.* at 273–74.

There is no similar concern here. Witcher clearly alleges that she requested a reasonable accommodation,[1] and drawing all reasonable inferences in her favor, the operative complaint suggests that the principal and assistant principal became aware of the request only when they were notified that the request was granted in September 2020. Moreover, Witcher alleges that the principal and assistant principal engaged in retaliatory conduct by making false allegations of underperformance that led to an alleged demotion to a class with a more demanding teaching environment in November 2020, just two months after the defendants learned of her accommodation. *See Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (holding that a demotion can constitute an adverse employment action); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (observing that the standard for an adverse employment action "covers a broader range of conduct" in the retaliation context). She further alleges that the adverse actions continued and escalated in the following months, culminating in a denial of tenure and ultimately in her firing, notwithstanding previous positive performance evaluations by other administrators at her school. Accordingly, Witcher plausibly alleges a retaliation claim under the ADA and we therefore vacate the district court's dismissal of that claim.

## II.    Witcher Alleged an ADA Interference Claim

We also conclude that Witcher's complaint raises an interference claim under the ADA's anti-interference provision, 42 U.S.C. § 12203(b). Section 12203(b) prohibits "coerc[ing],

---

[1] Requesting or "seeking [a] reasonable accommodation . . . constitutes protected activity under . . . [the] ADA." *Weixel v. Br. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002).

intimidat[ing], threaten[ing], or interfer[ing with]" a person who has "exercised or enjoyed . . . any right granted or protected by" the ADA. 42 U.S.C. § 12203(b).[2] Obtaining a reasonable accommodation on account of a disability is a right granted or protected by the ADA. *See* 42 U.S.C. § 12112(b)(5)(A); *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) ("The ADA . . . *require*[*s*] an employer to afford reasonable accommodation of an employee's known disability . . . ." (emphasis added)).[3]

Giving Witcher's complaint the proper liberal construction, her complaint raises an interference claim under § 12203(b) in addition to her retaliation claim under § 12203(a). *See, e.g.*, Third Amended Complaint, Dist. Ct. ECF No. 44, at pg. 8 ("Almost immediately after receiving the accommodation, defendants . . . discriminated against me based on my disability by repeatedly making false allegations about my work performance, documenting these allegations in disciplinary write-ups, and calling me for meetings about the false allegations."); *id.* at pg. 15 (alleging that the defendants "used their power as administrators to harass [Witcher] after [she] received an accommodation"). During oral argument, counsel for the defendants acknowledged that Witcher's complaint appeared to raise an interference claim and that the district court did not

---

[2] Although Witcher did not specifically mention § 12203(b) in her pleadings, the "failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim." *McLeod*, 864 F.3d at 157–58 (internal quotation marks omitted). Additionally, we acknowledge that there appears to be at least some overlap between ADA retaliation and interference claims, with prior cases from this Court often analyzing these claims together. *See, e.g.*, *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53 (2d Cir. 2002); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222 (2d Cir. 2001).

[3] Neither the operative complaint itself, nor the copy of the accommodation letter attached to an earlier pleading, clarifies whether the accommodation was premised on disability, or instead arose from the unique circumstances presented by the first wave of the COVID-19 pandemic. Because we are required to draw all reasonable inferences in Witcher's favor at the dismissal stage, *see Collins*, 979 F.3d at 132, we assume that the accommodation was sufficiently tethered to the ADA. *See also* 42 U.S.C. § 12102(1)(B)–(C); *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) ("Congress instructed courts that the 'definition of disability shall be construed in favor of broad coverage of individuals' . . . ." (ellipsis omitted) (quoting 42 U.S.C. § 12102(4)(A))).

address such a claim. *See* Oral Argument Audio Recording at 10:30–11:45. Accordingly, we vacate the dismissal of Witcher's complaint to the extent that the district court determined that Witcher only alleged an ADA retaliation claim under § 12203(a), and not an ADA interference claim under § 12203(b). *See McLeod*, 864 F.3d at 158 (vacating district court's determination that the plaintiff asserted claims only under federal law because, under proper liberal construction, the complaint also asserted state law discrimination claims).

## III. Final Considerations

Because the district court dismissed Witcher's federal claims, it declined to exercise supplemental jurisdiction over her state and city law claims under the NYSHRL and NYCHRL. *See Witcher*, 2023 WL 2609342, at *15. In light of our decision to vacate the judgment in part, we restore Witcher's state and city law claims by vacating the portion of the judgment declining to exercise supplemental jurisdiction. *See Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015). We make no assessment of whether Witcher plausibly alleged her state or city law claims or her ADA interference claim, which we will leave (along with the propriety of further amendment) to the district court in the first instance.

Finally, we observe that the attachments to Witcher's initial and first amended complaints, ECF Nos. 2 and 15, contain sensitive material that should not have been filed on the public docket. *See* Fed. R. Civ. P. 5.2(a). The district court should seal those documents from public view. We also note that, since these were Witcher's filings, she should take care (for the sake of her own privacy and security) to ensure that future filings comply with the redaction requirements set forth in the Federal Rules of Civil Procedure.

**CONCLUSION**

For the reasons set forth above, we conclude that the complaint should have survived dismissal to the extent indicated. We **AFFIRM** the judgment in part and **VACATE** in part, and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court